*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MOSQUITO HUNTERS, LLC,

                Petitioner,

v.

KELWOOD, INC., JEFF KELLY, and
DANIEL WOODHOUSE,

                Respondents.

Civ. Action No. 21-05033 (FLW)

OPINION

**WOLFSON, Chief Judge:**

      Before the Court is Petitioner Mosquito Hunters, LLC's ("MHLLC") Motion for Attorneys' Fees and Costs. ECF No. 10-1. Following a dispute between MHLLC and Kelwood, Inc., Jeff Kelly, and Daniel Woodhouse (collectively, "Respondents"), an arbitrator issued an award to MHLLC for damages and attorneys' fees that MHLLC incurred during the arbitration proceedings. Upon MHLLC's motion, ECF No. 2-1, this Court then entered a Judgment confirming MHLLC's arbitration award. ECF No. 8. MHLLC subsequently filed the present Motion requesting the Court to amend its Judgment to include additional attorneys' fees and costs that MHLLC incurred during the confirmation proceedings here. ECF No. 10-1. For the reasons set forth below, the Motion is **GRANTED**, and MHLLC is entitled to recover $18,828.52 in attorneys' fees incurred during the confirmation proceedings, as well as $1,331 in costs.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      In January 2019, Respondents entered into, and assumed all rights and obligations in connection with, two franchise agreements ("Franchise Agreements") and a promissory note (the

1

"Promissory Note") (collectively, the "Agreements") with MHLLC. ECF No. 2-2 ¶ 2, Exs. 2-4. In general, the Franchise Agreements obligate Respondents to operate a pest control business during a specified period, following the guidelines specified in the Agreements. ECF No. 1 ¶ 1. The Promissory Note requires Respondents to pay a principal, plus accrued interest, at certain intervals, and to pay all of the outstanding principal and interest if Respondents default on their obligations under the Franchise Agreements. ECF No. 10-2 Ex. 3. Respondents are jointly and severally liable for the obligations under the Agreements. ECF No. 2-2 Exs. 5, 6.

The Franchise Agreements and Promissory Note contain several provisions that are relevant to the instant Motion. First, the Franchise Agreements contain an arbitration agreement. ECF No. 2-2 Exs. 2, 3 ¶ 15(F). As relevant here, the arbitration agreement provides:

> Subject to Subsection C above [authorizing the parties to institute court actions for injunctive relief in certain circumstances], all controversies, disputes, or claims between [MHLLC] . . . and [Respondents] arising out of or related to:
>
>   (1) [Respondents'] operation of [MHLLC's] Business
>   (2) this Agreement or any other agreement between the parties or any provision of such agreements
>   (3) the relationship of the parties hereto
>       . . .
> shall be submitted for binding arbitration . . . . The award of the arbitrator shall be final and judgment upon the award may be entered in any court of competent jurisdiction.

*Id.*

Second, both the Franchise Agreements and the Promissory Note contain provisions for attorneys' fees and costs. The Franchise Agreements provide, as relevant here:

> If [MHLLC] incurs expenses in connection with [Respondents'] failure to pay when due amounts owing to [MHLLC] . . . or otherwise to comply with this Agreement, [Respondents] shall reimburse [MHLLC] for any such costs and expenses which it incurs, including but not limited to reasonable legal, arbitrators', accounting and related fees.

*Id.* ¶ 15(E). Likewise, the Promissory Note provides: "[Respondents] agree[] to pay, upon [MHLLC's] demand therefor, any and all costs, fees, and expenses (including reasonable attorneys'

2

fees, costs, and expenses) incurred by [MHLLC] in enforcing any of [MHLLC's] rights hereunder." ECF No. 10-2 Ex. 3 at 2.

On or around March 16, 2020, Respondents ceased operating the franchises, thereby violating their contractual obligations to MHLLC under the Franchise Agreements. ECF No. 2-2 ¶ 3. As a result, Respondents' obligation under the Promissory Note became due immediately, and MHLLC demanded payment. *Id.* However, Respondents failed to pay any of the amounts due to MHLLC. *Id.*

Pursuant to the arbitration provision of the Franchise Agreements, MHLLC initiated arbitration against Respondents for violating their obligations under the Franchise Agreements and the Promissory Note. *Id.* ¶ 4. Following arbitration proceedings, in which Respondents failed to appear or submit any evidence, the arbitrator issued an award to MHLLC totaling $89,182.06. *Id.* ¶ 7. The award is comprised of $48,259.25 owed under the Promissory Note, $38,551.81 in attorneys' fees and costs associated with the arbitration proceedings, $925 for administrative fees, and $1,392 for compensation to the arbitrator. *Id.*

On March 12, 2021, MHLLC filed a Petition and Motion to Confirm the Arbitration Award in this Court. ECF Nos. 1, 2. On April 12, 2021, the Court issued an Order confirming the arbitration award and a Judgment in the amount of $89,182.06 against Respondents, jointly and severally, with post-judgment interest. ECF Nos. 7 and 8. The Judgment confirmed each component of the arbitrator's total award, including the $38,551.06 in attorneys' fees and costs. ECF No. 8.

On April 27, 2021, MHLLC filed the present Motion for Attorneys' Fees and Costs. The Motion requests the Court to amend the Judgment confirming MHLLC's arbitration award to include the attorneys' fees and costs MHLLC incurred in association with the present action (*i.e.*, fees and costs incurred in confirming the arbitration award). ECF No. 10-2 at 2. Specifically, the

Motion requests that the Court amend the Judgment to add $18,828.52 in attorneys' fees and $1,331 in costs. *Id.* at 5. Respondents did not file any opposition by the June 7, 2021 deadline.

## II. LEGAL STANDARD

### A. Court Authority to Hear Motions for Post-Arbitration Attorneys' Fees

As a threshold matter, the Court must first establish whether it has the authority to hear MHLLC's Motion for attorneys' fees under the Federal Arbitration Act ("FAA"). The FAA itself "bestow[s] no federal jurisdiction but rather require[es] an independent jurisdictional basis." *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n. 32 (1983)); *Goldman v. Citigroup Capital Mkts., Inc.*, 834 F.3d 242, 250 (3d Cir. 2016). Where an "independent jurisdictional basis" exists,[1] the FAA authorizes a court to issue an "order confirming the [arbitration] award," unless the court determines that certain narrow grounds exist to "vacate[], modif[y], or correct[]" the award. 9 U.S.C. § 9. As multiple courts have confirmed, "'there is nothing in the [FAA] which provides attorneys' fees to a party who is successful in seeking confirmation of an arbitration award in the federal courts.'" *See Davidson Design & Dev. Inc. v. Frison*, 815 Fed. App'x 659, 661 (3d Cir. 2020) (quoting *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994)); *Crossville Medical Oncology, P.C. v. Glenwood Sys., LLC*, 610 Fed. App'x 464, 467 (6th Cir. 2015) (same).

---

[1] Here, an "independent jurisdictional basis" exists based on the diversity of citizenship of the parties. *See, e.g.*, *Sutter v. Oxford Health Plans, LLC*, Civ. Nos. 05-2198, 10-4903, 2011 WL 734933, at *2-3 (D.N.J. Feb. 22, 2011) (concluding court had subject matter jurisdiction over motion to confirm arbitration award based on diversity of citizenship). Diversity of citizenship exists, 28 U.S.C. § 1332(a), as MHLLC is organized under Delaware law with its principal place of business in New Jersey, ECF No 1 ¶ 1, and Respondents are residents of North Carolina. *Id.* ¶¶ 2-4. Furthermore, MHLLC sought to confirm an award totaling $89, 182.06, ECF No. 2-1 at 2, placing the amount-in-controversy over $75,000. 28 U.S.C. § 1332(a).

In this Circuit, which follows the "'American Rule,' each party bears its own attorneys' fees," but the prevailing party may recover attorneys' fees when provided by "statute or contract." *Frison*, 815 Fed. App'x at 660 (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010)); *Apple Corps Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 484 (D.N.J. 1998) (concluding that a court may award attorneys' fees and costs "to a prevailing party in a federal litigation where authorized by statute, court rule or contract"). "A 'prevailing' plaintiff entitled to a fee award is one who has succeeded on any significant issue in litigation [that] achieves some of the benefit the part[y] sought in bringing the suit." *Machado v. Law Offices of Jeffrey H. Ward*, Civ. No. 14-7401, 2017 WL 2838458, at *1 (D.N.J. June 30, 2017) (citations omitted).[2] Here, because the FAA does not authorize the Court to grant attorneys' fees in these circumstances, and MHLLC has not raised any other statutory authority, the "[C]ourt may only award attorneys' fees if [doing so] is authorized by . . . the parties' contractual agreement." *Crossville*, 610 Fed. App'x at 467. Indeed, there are contractual fee provisions in the Franchise Agreements and Promissory Note. ECF No. 2-2 Exs. 2, 3 ¶ 15(E); ECF No. 10-2 Ex. 3 at 2.

The Court must interpret the parties' contract based on "state substantive law," *Crossville*, 610 Fed. App'x at 468, and, as provided in the Franchise Agreements, New Jersey law governs this dispute. ECF No. 2-2 Exs. 2, 3 ¶ 15(G). "Under New Jersey law, 'courts should enforce contracts as the parties intended,' which is assessed by examining the 'plain language of the contract,' 'the surrounding circumstances, and the purpose of the contract[.]'" *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 228-29 (3d Cir. 2018) (quoting *Pacifico v. Pacifico*, 190 N.J. 258, 920 A.2d 73, 77 (2007); *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 186 N.J. 99, 892 A.2d 646, 656 (2006)). "Contract provisions are to be interpreted so as to give each provision meaning, rather than rendering

---

[2] Because MHLLC received an arbitration award, which the Court entered as a judgment, ECF No. 8, MHLLC qualifies as a "prevailing" party.

some provisions superfluous." *Carter v. Exxon Co. USA, a Div. of Exxon Corp.*, 177 F.3d 197, 206 (3d Cir. 1999) (citing, *inter alia*, *Ehnes v. Hronis*, 127 N.J.L. 551, 23 A.2d 592, 593 (1942)).

### B. Standard Governing an Award of Attorneys' Fees

If I have the authority to hear MHLLC's Motion, I must then determine whether the attorneys' fees MHLLC requests are reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "The party seeking attorney[s'] fees has the burden to prove that its request . . . is reasonable," and "[t]o meet its burden the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The Supreme Court has held that '[t]he most useful starting point for determining the amount of a reasonable fee is'" the "lodestar," which equals "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (quoting *Hensley*, 461 U.S. at 433). "Reasonable hourly rates are typically determined based on the market rate in the attorney's community for lawyers of similar expertise and experience." *Machado*, 2017 WL 2838458, at *2 (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 712 (3d Cir. 2005)). "After a court ascertains a reasonable hourly rate, it must then determine whether the hours that the attorney expended are reasonable." *Id.* (citing *Hensley*, 561 U.S. at 433-34). The Court will "exclude hours that are not reasonably expended," such as hours that "are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). However, the Court "may not reduce an award *sua sponte*" and may "only do so in response to specific objections made by the opposing party." *Interfaith*, 416 F.3d at 711.

### III. DISCUSSION

Guided by the foregoing principles, I now turn to the present Motion. I begin by addressing the Court's authority to hear MHLLC's Motion pursuant to the FAA and the Agreements. After

6

concluding that such authority exists, I turn to the merits of MHLLC's request for attorneys' fees. Because MHLLC's request is reasonable, and Respondents have not opposed the Motion, I will grant MHLLC's Motion for attorneys' fees incurred during the confirmation proceedings.

### A. The Court's Authority to Hear MHLLC's Motion

In addressing the Court's authority to hear MHLLC's Motion, I will begin by discussing the relevant circuit-court case law governing this case before turning to my analysis. I conclude that I have the authority under the Franchise Agreements and the Promissory Note to amend the Judgment confirming MHLLC's arbitration award.

#### 1. Applicable Circuit-Court Case Law

The Third Circuit has not had occasion to address a court's authority, as established by contract, to resolve a motion seeking attorneys' fees incurred in confirming an arbitration award.[3] However, courts outside the Third Circuit have addressed the question MHLLC's Motion raises; four decisions are particularly relevant, and I recount them in detail, as the specific facts in each case will bear on my analysis here.

First, in *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986), the Fifth Circuit upheld a district court's award of attorneys' fees in a post-arbitration proceeding. *Id.* at 579. There, a franchise agreement provided that a franchisor would pay the fair market value of the franchise if

---

[3] In *Frison*, the Third Circuit addressed a motion seeking attorneys' fees incurred during proceedings in which a non-prevailing party in arbitration unsuccessfully challenged a district court's judgment confirming the arbitration award. 815 Fed. App'x at 660. There, the prevailing party argued that a particular statute authorized courts to award attorneys' fees. *Id.* The Third Circuit rejected that argument, concluding that the statute which the prevailing party had invoked was inapplicable and that the motion arose instead under the FAA, which did not provide for attorneys' fees. *Id.* at 660-61. However, the prevailing party in *Frison* apparently did not argue that the parties' contract separately authorized a court to grant attorneys' fees incurred during confirmation proceedings. Thus, although *Frison* confirms this Court's limited authority pursuant to the FAA, it does not address the precise question at issue here.

7

it terminated the agreement, and that the parties would submit disputes over the fair market value to arbitration. *Id.* After the franchisor terminated the agreement, an arbitrator issued an award for the fair market value, and a district court then confirmed the award and granted attorneys' fees. *Id.* at 580. On appeal, the franchisor argued that the FAA did not authorize the district court to award attorneys' fees because it "sat solely to confirm the arbitration award," which did not encompass attorneys' fees. *Id.* at 580. The Fifth Circuit rejected that argument because the parties "did not agree to submit to arbitration the entire dispute between them arising from the contract[; rather,] the only issue submitted to the arbitrators was the fair market value of the franchise." *Id.* at 581. However, the court noted that "[i]f . . . the arbitration agreement had provided that 'any dispute arising from the contract' would be submitted to arbitration, a strong case could be made that any award of attorney's fees, interest, and costs was necessarily submitted to the arbitrators and a district court that made such an award would be impermissibly modifying the arbitrators' decision." *Id.*

Second, in *Menke v. Monchecourt*, 17 F.3d 1007 (7th Cir. 1994), the Seventh Circuit held that a district court did not possess the authority to grant attorneys' fees incurred in bringing an action to confirm an arbitration award. *Id.* at 1010. In *Menke*, a dispute arose between a stockbroker and his customer, and a code governing the stockbroker's conduct required that "any" covered "dispute" with a customer "arising in connection with the [stockbroker's] business . . . shall be arbitrated." *Id.* at 1008, 1010 n.1. After receiving an arbitration award, the customer filed a motion in the district court to confirm the award and, *inter alia*, recover attorneys' fees she incurred during the confirmation proceedings. *Id.* at 1008. The district court denied the customer's request for attorneys' fees associated with the confirmation proceedings, and the Seventh Circuit affirmed, concluding that the FAA did not authorize the district court "to award . . . any additional attorneys' fees [the customer] incurred in commencing [an] action for confirmation." *Id.* at 1009. Furthermore, the court determined that the customer had not provided any other statutory or contractual basis to award attorneys' fees.

8

*Id.* Thus, because the parties committed to arbitration "'any dispute arising from the contract,'" the court concluded that, following *Schlobohm*, "any award of attorneys' fees . . . was necessarily submitted to the arbitrators," and the district court could not "modify[] the arbitrators' decision." *Id.* at 1010 (quoting *Schlobohm*, 806 F.2d at 581) (internal quotation marks omitted).

Third, in *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, the Sixth Circuit similarly affirmed a district court's dismissal of a motion for attorneys' fees incurred during proceedings to confirm an arbitration award. 610 Fed. App'x at 470. The parties' contract provided that "[a]ny dispute arising out of or in connection with this Agreement . . . shall be determined by arbitration[,] . . . and it is the express desire of the parties that the prevailing party be awarded costs and attorneys' fees and the award be entered as a judgment in [a specified] jurisdiction." *Id.* at 468. Following a dispute, an arbitrator issued an award that included attorneys' fees incurred during the arbitration proceedings, which a district court confirmed. *Id.* at 466. Thereafter, the prevailing party filed a motion requesting that the district court grant additional attorneys' fees associated with the confirmation proceedings. *Id.* The district court denied the motion, and the Sixth Circuit affirmed, for two reasons: first, the court concluded that, because arbitrators issue "award[s]" and courts enter "judgment[s]," the provision authorizing an "award" for attorneys' fees implied that only an arbitrator could grant attorneys' fees under the contract, and a court could only confirm that award by entering a "judgment," *id.* at 468-69; second, the court concluded that the provision committing to arbitration "[a]ny dispute arising out of or in connection with [the contract]" implied that the parties must submit disputes over attorneys' fees to an arbitrator as well. *Id.* at 469-70.

Relevant here, *Crossville* distinguished a district court decision, *Sailfrog Software, Inc. v. Theonramp Group, Inc.*, Civ. No. 97-7014, 1998 WL 30100 (N.D. Cal. Jan. 20, 1998). In *Sailfrog*, a contract provided that "any dispute or claim will be settled by binding arbitration" and that, "[i]f any action at law or in equity is brought for a breach of or is necessary to enforce the terms of this

9

agreement, the prevailing party shall be entitled to reasonable attorney's fees." *Id.* at *1, *5. Following an arbitration proceeding in which an arbitrator issued an award, the prevailing party filed a motion to confirm the award and obtain attorneys' fees incurred during post-confirmation proceedings. *Id.* at *2, *5. *Sailfrog* granted the motion, concluding that the contract encompassed attorneys' fees incurred in confirming an arbitration award. *Id.* at *5. However, *Crossville* concluded that the contract provision at issue there was "not as broad" as the contract in *Sailfrog*: whereas the *Sailfrog* contract authorized "attorneys' fees for 'any action at law or in equity[,]'" the *Crossville* contract "state[d] that 'the award be entered as a judgment,'" which only a court could do; and, unlike the contract in *Crossville*, the *Sailfrog* contract "allow[ed] attorneys' fees for an action 'necessary to enforce the terms of th[e] agreement,'" which "contemplate[s] an award of attorneys' fees for actions outside the scope of arbitration because additional litigation could be necessary to enforce the agreement." 610 Fed. App'x at 469 (citing *Sailfrog*, 1998 WL 30100, at *5).

Finally, in *Bay Shore Power Co. v. Oxbow Energy Solutions, LLC*, 969 F.3d 660 (6th Cir. 2020), the Sixth Circuit distinguished *Crossville*, and held that a district court had the authority to award attorneys' fees incurred during proceedings to confirm an arbitration award. *Id.* at 667. The contract at issue in *Bay Shore* contained provisions that "appear[ed] to be in conflict." *Id.* at 662. One provision committed "any dispute" arising under the parties' agreement to an arbitration panel, but explicitly prohibited the arbitration panel from awarding attorneys' fees. *Id.* at 662, 664. In contrast, a second provision stated that "[t]he prevailing party in any arbitration or court proceedings shall be reimbursed by the other party for . . . attorneys' fees[] incurred by said prevailing party." *Id.* at 662-63. After a dispute arose, an arbitration panel issued an award that did not include attorneys' fees, and the prevailing party then moved to confirm its arbitration award and recover attorneys' fees incurred during the confirmation proceedings. *Id.* at 662. In response, the non-prevailing party argued that "the arbitration panel's decision to not award attorneys' fees was part of the panel's merits

decision and [wa]s insulated from judicial review because the [parties' agreement] delegate[d] 'any dispute' arising under the [agreement] to an arbitration panel." The Sixth Circuit rejected this argument. Instead, to reconcile the contract's seemingly inconsistent provisions, the court interpreted the contract to imply that "'any dispute' except for attorneys' fees is to be 'submitted to the arbitrators.'" *Id.* at 665. Furthermore, the court interpreted the term "reimburse[]" to imply that the parties could recover attorneys' fees incurred during post-arbitration proceedings. *Id.* at 666. Thus, the court concluded, the district court "would not be impermissibly modifying the arbitrators' award" by granting attorneys' fees as provided in the contract. *Id.*

### 2. Analysis

Based on "the plain language of the contract," *MacDonald*, 883 F.3d at 228-29, "interpreted so as to give each provision meaning," *Carter*, 177 F.3d at 206, as well as the case law discussed *supra*, I conclude that I have the authority under the FAA and the Agreements to award the attorneys' fees that MHLLC incurred during the confirmation proceedings.

First, both the Franchise Agreements and the Promissory Note contemplate that the parties may recover attorneys' fees incurred during post-arbitration proceedings, including the confirmation action at issue here. The Franchise Agreements require Respondents to "reimburse" MHLLC "for any . . . costs and expenses which it incurs, including . . . reasonable legal . . . fees," "in connection with [Respondents'] failure to pay when due amounts owing to [MHLLC] . . . or otherwise to comply with this Agreement." ECF No. 2-2 Exs. 2, 3 ¶ 15(E). Similarly, the Promissory Note requires Respondents "to pay . . . reasonable attorneys' fees, costs, and expenses[] incurred by [MHLLC] in enforcing any of [MHLLC's] rights hereunder." ECF No. 10-2 Ex. 3 at 2. Taken together, these clauses provide broadly for attorneys' fees incurred in enforcing the Agreements. Furthermore, by using the term "reimburse," the Franchise Agreements anticipate that some payments for attorneys' fees may occur after any arbitration proceedings are complete. *See Bay Shore*, 969 F.3d at 666

11

(concluding that contract providing for "reimburse[ment]" of attorneys' fees encompassed fees incurred during post-arbitration proceedings). As such, the Agreements "contemplate an award of attorneys' fees for actions outside the scope of arbitration because additional litigation could be necessary to enforce the agreement." *See Crossville*, 610 Fed. App'x at 469; *see also Sailfrog*, 1998 WL 30100, at *5 (granting motion for attorneys' fees incurred during confirmation proceedings based on a contract authorizing fees incurred in an action "necessary to enforce" the parties' agreement).

Second, the Agreements—although not stated explicitly—imply that the parties consented to courts awarding attorneys' fees incurred during confirmation proceedings. Indeed, the Franchise Agreements anticipate that the parties would seek to confirm arbitration awards in court. *See* ECF No. 2-2 Exs. 2, 3 ¶ 15(F) (authorizing "any court of competent jurisdiction" to enter a "judgment upon the [arbitrator's] award"). Furthermore, only a court can award attorneys' fees incurred during confirmation proceedings. Thus, interpreting the Agreements to strip courts of the authority to award post-arbitration fees would nullify the broad provisions allowing the parties to recover those fees. Because "[c]ontract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous," *Carter*, 177 F.3d at 206, the proper interpretation, here, is that the Agreements implicitly authorize courts to award attorneys' fees incurred during post-arbitration proceedings.

Finally, this case is distinguishable from *Menke* and *Crossville*. Those cases concluded that, when a contract commits to arbitration "all disputes" arising between the parties, and there is no separate statutory or contractual basis upon which a court may award attorneys' fees, a court does not have the authority to award attorneys' fees under the FAA. 17 F.3d at 1009-10; 610 Fed. App'x at 467-70. And, as was true in those cases, the Franchise Agreements commit to arbitration "all controversies, disputes, or claims between" the parties that arise out of the Agreements. ECF No. 2-2 Exs. 2, 3 ¶ 15(F). However, in *Menke*, the court concluded that there was no separate statutory or

contractual basis upon which a court could award attorneys' fees. 17 F.3d at 1009. Likewise, in *Crossville*, the court concluded that the parties' contract "only authorize[d] an *arbitrator* to award attorneys' fees and costs during *arbitration*." 610 Fed. App'x at 468 (emphasis in original). Here, the Agreements do not contain any similar language specifying that only an arbitrator may award attorneys' fees. Rather, the Agreements merely state that Respondents must "reimburse" or "pay" MHLLC for attorneys' fees and costs it incurs in enforcing the Agreements. ECF No. 2-2 Exs. 2, 3 ¶ 15(E); ECF No. 10-2 Ex. 3 at 2. And, as discussed *supra*, such provisions contemplate that a court may award attorneys' fees incurred during confirmation proceedings.

Having concluded that I have the authority to consider MHLLC's Motion, I turn next to the merits of MHLLC's request for attorneys' fees and costs.

### B. The Reasonableness of MHLLC's Request for Attorneys' Fees and Costs

For the reasons which follow, I conclude that MHLLC's request for $18,828.52 in post-arbitration attorneys' fees, and $1,331 in costs, is reasonable.

First, counsel's hourly rates are reasonable in light of the "'market rate prevailing in the relevant legal community.'" *Shelton v. Restaurant.com, Inc.*, Civ. No. 10-824, 2016 WL 7394025, at *3 (D.N.J. Dec. 21, 2016) (quoting *Doe v. Turhune*, 121 F. Supp. 2d 773, 781 (D.N.J. 2000)). "To determine a reasonable hourly rate, the Court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Rode*, 892 F.2d at 1183). Here, MHLLC submitted an hourly rate of $685 for Nancy Sims (Of Counsel), $690 for Amanda Camelotto (Associate), and $590.75 for Michelle Chung (Associate). ECF No. 10-2 ¶ 11. MHLLC also submitted evidence reflecting the low, high, and average hourly rates at peer firms of MHLLC's counsel, DLA Piper, as published by the National Law Journal in 2017. ECF No. 10-2 ¶ 13, Ex. 7. The evidence reflects that the hourly rates for Ms. Sims and Ms. Chung are lower than the

average rates at peer firms for counsel and associates, respectively. *Id.* ¶¶ 11, 14. The hourly rate for Ms. Camelotto is slightly higher than the average peer-firm rate for associates. *Id.* However, Ms. Camelotto is a ninth-year associate, placing her at the higher end of DLA Piper's associate rates, and her rate is still well below the highest rates for associates reported among DLA Piper's peer firms. *Id.* ¶¶ 11, 13, 19. Furthermore, as MHLLC notes, the peer-firm data is from 2017 and, therefore, does not account for inflation. *Id.* ¶ 13, n.2. For these reasons, the hourly rates MHLLC requests are reasonable.

Second, the hours counsel expended during the confirmation proceedings are also reasonable. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183. Here, MHLLC submitted evidence that Ms. Chung—who, with four years of experience, was the most junior associate on the team—billed 14.7 hours, devoted primarily to researching and drafting the confirmation documents; Ms. Camelotto billed 6 hours, which she spent reviewing and revising those documents; and Ms. Sims billed 8.6 hours, which she spent on case strategy and reviewing the filing materials. ECF No. 10-2 ¶ 11. In that regard, as MHLLC argues, the associates on the team performed most of the work in drafting the relevant documents, whereas the senior attorney—Ms. Sims—billed for time related to strategy and reviewing near-final work product. *See id.* Ex. 6. Counsel, therefore, employed a reasonable division of labor and avoided expending "redundant" hours. *Rode*, 892 F.2d at 1183. Furthermore, Respondents have not opposed the Motion with any challenge that the hours counsel expended were "excessive." *Id.* Because the Court may only reduce an award "in response to specific objections made by the opposing party," *Interfaith*, 416 F.3d at 711, there is no basis to reduce the charges counsel submitted.

Finally, MHLLC is entitled to recover the $1,331 in costs it incurred during the confirmation proceedings. "Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

14

Fed. R. Civ. P. 54(d)(1). "[T]h[is] rule creates the 'strong presumption' that costs are to be awarded." *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 462 (3d Cir. 2000) (citations omitted). "Moreover, the losing party bears the burden of making the showing that an award is inequitable under the circumstances." *Id.* at 462-63. Here, MHLLC is the prevailing party, the Agreements explicitly provide for the recovery of "costs" incurred while enforcing the Agreements, and the types of costs for which MHLLC seeks reimbursement—filing and service fees—are recoverable. ECF No. 2-2 Exs. 2, 3 ¶ 15(E); ECF No. 10-2 Ex. 3 at 2; *Machado*, 2017 WL 2838458, at *5 (awarding filing and service-of-process fees as recoverable costs). Furthermore, Respondents have not opposed the Motion and, therefore, have not met their burden to contest the costs MHLLC requests. Accordingly, MHLLC is entitled to recover the costs it incurred in confirming the arbitration award.

## IV. CONCLUSION

For the reasons set forth above, MHLLC's Motion for Attorneys' Fees and Costs is **GRANTED**. MHLLC is entitled to recover $18,828.52 in attorneys' fees, and $1,331 in costs, incurred during the confirmation proceedings. An appropriate form of Order and Amended Judgment are filed herewith.

Date: July 7, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge